**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**Kathy Wallen, Plaintiff,**

**vs.**

**Maker's Pride a/k/a HEARTHSIDE FOOD SOLUTIONS, LLC, Defendant.**

Case No. 1:26-cv-284

**COMPLAINT AND JURY TRIAL**

Plaintiff Kathy Wallen, by and through her attorneys, for her Complaint against Defendant Maker's Pride a/k/a Hearthside Food Solutions, LLC states as follows:

**PARTIES**

1. Plaintiff Kathy Wallen ("Plaintiff") is an individual who, at all times relevant to this action, resided at 6330 Kentucky Avenue, Hammond, Indiana 46323. Plaintiff was a Production Planner.

2. Upon information and belief, Defendant Maker's Pride a/k/a Hearthside Food Solutions, LLC ("Defendant") is and has been a corporation with its principal place of business at 4295 Ohio Street, Michigan City, County of LaPorte, State of Indiana.

**JURISDICTION AND VENUE**

3. This Court has personal jurisdiction over Defendant because Defendant Maker's Pride f/k/a Hearthside Foods conducts substantial business operations in Indiana, including employing Plaintiff in its Michigan City, Indiana facility, and the events giving rise to Plaintiff's claims occurred in connection with Plaintiff's employment by Defendant, which maintains significant contacts with Indiana. Defendant should have reasonably anticipated being haled into court in Indiana in connection with these claims.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA), both federal statutes.

5. Venue is proper in the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including Plaintiff's employment relationship with Defendant and the alleged discriminatory and retaliatory acts.

**STATEMENT OF FACTS**

6. On or about February 7, 2025, Defendant issued a Performance Improvement Plan (PIP) to Plaintiff, citing concerns with attendance, conduct, and participation in the Storm Card program.

7. The PIP listed an end date of April 7, 2025.

8. The attendance section of the PIP alleged that Plaintiff had unpaid absences after using all paid time off, instances of tardiness, and difficulties complying with FMLA reporting requirements.

9. The PIP stated that Plaintiff’s attendance placed a burden on teammates and affected metrics reporting.

10. The PIP referenced prior written warnings about attendance.

11. The Storm Card section of the PIP stated that Plaintiff completed 11 of 50 cards in 2024 despite repeated communications about expectations.

12. The conduct section of the PIP alleged aggressive and demanding interactions with peers, pestering for answers, and implying schedule changes to customers without team confirmation.

13. The improvement plan set goals for attendance, conduct, and weekly Storm Card submission, with a start date of February 7, 2025, and an end date of April 7, 2025.

14. On or about February 10, 2025, Plaintiff sent an email to Marc Foster, Anna Del Real, and Jimmy Justice formally requesting an accommodation in the form of a company laptop to work from home when depression symptoms prevented office attendance.

15. Plaintiff's request for a laptop accommodation was not answered by Defendant.

16. On or about March 21, 2025, Plaintiff emailed Marc Foster and Anna Del Real disputing the PIP, alleging that the PIP was based on absences related to her Major Depressive Disorder and FMLA use, and reiterating that her February 10 accommodation request had received no response.

17. Plaintiff admitted low Storm Card participation but stated that peers were also noncompliant without being placed on PIPs.

18. Plaintiff denied being aggressive or making commitments to customers without confirmation and requested removal of these statements absent specific examples.

19. Plaintiff stated that other team members displayed disrespect and insubordination without issue, as reflected in her contemporaneous notes from February 15 and 18, 2025.

20. Plaintiff recorded that Marc Foster said he might remove conduct items from the PIP if examples could not be found.

21. On or about March 28, 2025, Plaintiff emailed Corporate HR's Ben Charlick about using PTO to cover FMLA days taken March 24–27, 2025, after being told only HR could approve PTO for FMLA.

22. Plaintiff reported being told she contacted Corporate HR, which she denied, and linked the issues to her February 7, 2025 PIP.

23. On or about May 28, 2025, Plaintiff's manager called her into his office with a list of her FMLA days and tardies and indicated the PIP was ongoing beyond April 7, 2025.

24. Plaintiff stated that weekly PIP reviews had not occurred during the PIP period.

25. Plaintiff emailed Ben Charlick on May 28, 2025, noting that no examples had been provided for the conduct section of the PIP.

26. On or about June 2, 2025, Plaintiff emailed Ben Charlick again stating her PIP concerns were never addressed, Foster had not provided conduct examples or removed them, and FMLA days were being counted as absenteeism.

27. Ben Charlick replied on June 2, 2025, that he was looking into Plaintiff's concerns and would follow up after speaking with Jimmy Justice.

28. Plaintiff asserted that she worked 8.5 hours per day while peers worked eight or 7.5 hours and were allowed flexible times, and that Foster was only monitoring her schedule.

29. Plaintiff stated that Foster told her, "Don't argue w/ me I see their time cards," in response to her claim that others worked eight hours.

30. Plaintiff tracked her peers' time and found that one peer worked 7:30am to 3:00pm (7.5 hours) and another came in 30 minutes early and left 30 minutes early (eight hours).

31. Plaintiff was told she could not alter her start and end times, while her peers were able to do so.

32. On or about May 28, 2025, Foster produced a folder with Plaintiff's FMLA days and asked, "What are we going to do about this?"

33. Plaintiff referenced her Major Depressive Disorder and intermittent FMLA in response to Foster's question about her absences.

34. Plaintiff's notes for May 28, 2025, state Foster cited FMLA days and arrivals, denied a work-from-home request that morning, and said the PIP was ongoing.

35. Plaintiff left a voicemail for Anna Del Real on April 2, 2025, regarding the ongoing PIP and contact information for Ben at Corporate HR.

36. Plaintiff followed up with Corporate HR multiple times about her discrimination claim up to the date of her termination.

37. Plaintiff asserts that from the time she reported her discrimination claim to Corporate HR on March 28, 2025, to her termination on June 9, 2025, Corporate HR did not promptly and thoroughly investigate her claim.

38. On or about June 3, 2025, Plaintiff worked from home on her personal computer, which failed after four hours, resulting in lost pay.

39. Plaintiff states that maintenance at her home required her to remain there on June 3, 2025, and that the lack of a company laptop caused four hours of lost pay.

40. On June 4, 2025, Plaintiff took an FMLA day, which Defendant claimed was falsely taken due to Plaintiff borrowing money from a coworker.

41. Plaintiff denies missing work for financial reasons and states she had longstanding mutual loans with the coworker.

42. Plaintiff states that Marc Foster told the coworker months earlier not to loan her money.

43. Plaintiff asserts that all absences from February 2025 through her termination were FMLA-related.

44. Plaintiff denies inappropriately requesting FMLA on seven occasions and states Defendant provided no proof of such allegations.

45. Plaintiff provided documentation from MetLife showing approved intermittent FMLA leave for her own serious health condition from February 10, 2025, to February 9, 2026, at up to one day per incident, two incidents per month.

46. MetLife records show approved intermittent absences for Plaintiff on May 2, 2025 (three hours), May 22, 2025 (eight hours), and June 4, 2025 (eight hours), all under Federal FMLA for Plaintiff's serious health condition.

47. MetLife records show approved absences for Plaintiff under Federal FMLA for her own serious health condition on March 24–27, 2025, eight hours each day.

48. MetLife records show approved FMLA absences for Plaintiff for care of a family member on February 5 and 6, 2025, and December 10 and 11, 2024.

49. Plaintiff states she emailed a list from MetLife on April 5, 2026, showing all intermittent FMLA days from February 10, 2025, forward were reported.

50. Plaintiff maintains she complied with FMLA reporting requirements since February 10, 2025.

51. Defendant attached Plaintiff's son's FMLA documentation in their answer.

52. Plaintiff asserts that Defendant's management stated no similar roles had laptops, but her peer Andrew Vernier-Boklund had a company laptop and used it to complete work from home.

53. Plaintiff states that an internal policy permitted one work-from-home day per month, and her FMLA was two days per month.

54. Plaintiff asserts that her request for a company laptop would have resulted in only one additional day per month working from home.

55. Plaintiff states that actions by Marc Foster and Jimmy Justice since February 2025 have affected her mental, physical, and financial well-being.

56. Defendant cited performance, attendance, and conduct as reasons for Plaintiff's termination.

57. Plaintiff states she received a $17,000 salary increase the year before Marc Foster became her manager.

58. Plaintiff asserts that her salary increase was to prevent her from leaving the company.

59. Plaintiff asserts that Defendant provided no proof that alleged performance issues impacted operations.

60. Plaintiff states that since her separation, colleagues reported that SAP data became problematic and her replacement could not perform the duties.

61. Plaintiff believes Defendant is providing negative references to potential employers.

62. Plaintiff states that emails from peers Adam Rettinger and Lee Giggy were dated June 4, 2025, though interactions occurred two weeks earlier, and she believes Marc Foster solicited those emails to support her termination.

63. Plaintiff denies the truth of the emails from Adam Rettinger and Lee Giggy and asserts that her interactions with them were not hostile.

64. Plaintiff states that her peers were allowed to adjust their start times and worked fewer hours than she was required to work.

65. Plaintiff asserts that she was required to work 8.5 hours every day and was not allowed to adjust her start or end times.

66. Plaintiff states that she was granted unemployment benefits after her termination.

67. Plaintiff describes mental health harm, loss of access to her psychiatrist due to loss of insurance, treatment by her primary care physician, stress-related neck and shoulder pain, and financial hardship following her termination.

**CAUSES OF ACTION**

**COUNT I – INTERFERENCE AND RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT (FMLA)**

68. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67, as if fully set forth herein.

69. Plaintiff was an eligible employee under the FMLA, having worked for Defendant for more than 12 months and at a location with at least 50 employees within 75 miles, and was entitled to take leave for her own serious health condition and to care for a family member, as confirmed by Defendant's own records and FMLA approval notices from MetLife and the employer's HR department.

70. Plaintiff exercised her rights under the FMLA by requesting and taking intermittent and continuous leave for qualifying reasons, and she complied with all reporting and certification requirements as evidenced by MetLife's notifications and Plaintiff's communications with Defendant.

71. Defendant interfered with Plaintiff's FMLA rights by treating protected FMLA absences as unexcused absenteeism, subjecting Plaintiff to discipline and a Performance Improvement Plan (PIP) that cited FMLA absences as performance issues, and by failing to properly credit and protect her FMLA leave.

72. Defendant retaliated against Plaintiff for exercising her FMLA rights by subjecting her to heightened scrutiny, denying her the use of PTO to cover FMLA days, extending the PIP beyond its stated end date, and ultimately terminating her employment for alleged attendance and performance issues that were pretextual and based on protected FMLA leave.

73. As a direct and proximate result of Defendant's interference with and retaliation for Plaintiff's exercise of her FMLA rights, Plaintiff has suffered damages, including lost wages, lost benefits, and emotional distress.

**COUNT II – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE AMERICANS WITH DISABILITIES ACT (ADA)**

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67, as if fully set forth herein.

75. Plaintiff is a qualified individual with a disability, specifically Major Depressive Disorder, which substantially limits one or more major life activities, and Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

76. Defendant was aware of Plaintiff's disability and need for accommodation, as Plaintiff made formal requests for a reasonable accommodation (a company laptop to work from home when symptoms prevented her from being in the office) and explained the connection between her disability and her attendance.

77. Defendant failed to engage in the interactive process and denied Plaintiff's request for a reasonable accommodation without justification, as evidenced by management's refusal to provide a laptop and the statement that "it's never going to happen."

78. Defendant discriminated against Plaintiff on the basis of her disability by subjecting her to disparate treatment, including heightened scrutiny, discipline, and termination, and by failing to address her complaints of discrimination or provide equal flexibility in work schedules and accommodations as provided to similarly situated employees.

79. As a direct and proximate result of Defendant's discrimination and failure to accommodate, Plaintiff has suffered damages, including lost wages, lost benefits, and emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kathy Wallen respectfully requests that this Court enter judgment in her favor and against Defendant Maker's Pride a/k/a Hearthside Food Solutions, LLC and grant the following relief:

1. Declare that Defendant Maker's Pride a/k/a Hearthside Food Solutions, LLC violated the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) by interfering with Plaintiff's rights, retaliating against her for exercising those rights, discriminating against her on the basis of disability, and failing to provide reasonable accommodation as alleged herein.

2. Enjoin Defendant Maker's Pride a/k/a Hearthside Food Solutions, LLC from further violations of the FMLA and ADA, including but not limited to interfering with, retaliating against, or discriminating against employees for exercising rights under these statutes, and require Defendant to implement policies and training to prevent future violations.

3. Award Plaintiff Kathy Wallen reinstatement to her former position or, in the alternative, front pay in lieu of reinstatement, as well as all lost wages and employment benefits, including but not limited to back pay, lost health insurance, and other benefits to be determined at trial.

4. Award Plaintiff Kathy Wallen compensation for non-economic damages, including but not limited to emotional distress, pain and suffering, and loss of enjoyment of life, in an amount to be determined at trial.

5. Award Plaintiff Kathy Wallen her reasonable attorneys' fees, expert witness fees, and costs of this action as permitted by the FMLA, ADA, and other applicable law.

6. Award Plaintiff Kathy Wallen prejudgment and post-judgment interest as allowed by law.

7. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Mark Waterfill*
Mark R. Waterfill, Atty. No. 10935-49
6425 E. Co. Rd. 600 S.
Plainfield IN 46168
(317) 501-6060
mark@waterfilllaw.com